**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES FENSKE,<br>*Petitioner*,<br><br>v.<br><br>SERVICE EMPLOYEES<br>INTERNATIONAL, INC.; INSURANCE<br>COMPANY OF THE STATE OF<br>PENNSYLVANIA; DIRECTOR, OFFICE<br>OF WORKERS' COMPENSATION<br>PROGRAM,<br>*Respondents.* | No. 14-71512<br><br>BRB No.<br>13-0559<br><br>OPINION |

On Petition for Review of an Order of the
Benefits Review Board

Submitted May 12, 2016[*]
San Francisco, California

Filed August 26, 2016

Before: John T. Noonan, Kim McLane Wardlaw,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Benefits Review Board

The panel denied a petition for review of a decision of the Benefits Review Board holding that the petitioner, a United States government contractor in Iraq who suffered severe injuries caused by a suicide bomber, could not receive concurrent payments for total disability and permanent partial disability under the Longshore and Harbor Workers' Compensation Act.

Petitioner sought concurrent compensation for a "scheduled" injury (hearing loss) under 33 U.S.C § 908(c)(13) and total disability caused by his back injury. Petitioner alleged that he was exposed to excessive noise throughout his employment in Iraq.

The panel held that the holding in *Stevedoring Servs. Of Am. v. Price*, 382 F.3d 878 (9th Cir. 2004) (as amended) (awarding concurrent payments because the later total disability award was based on a wage that had already been decreased by the earlier partial disability) did not apply because a prerequisite for applying the *Price* theory is that the partial disability preceded the total disability, and petitioner's hearing loss did not precede his back injury. The panel also held that in a case where the only evidence of hearing loss was a post-retirement audiogram, the rule in *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs*, 506 U.S. 153, 165 (1993) (discussing when a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

hearing loss occurs and when it is complete for calculating benefits), applied when determining the timing of disability under *Price*, but *Price* did not apply in this case because petitioner's last day of exposure to excessive noise was the same day as his back injury. Finally, the panel declined to provide a decreased concurrent award capped at two-thirds of petitioner's wage under *ITO Corp. of Baltimore v. Green*, 185 F.3d 239 (4th Cir. 1999).

## COUNSEL

Joshua T. Gillelan, II, Longshore Claimants' National Law Center, Washington, D.C.; Eric A. Dupree, Dupree Law, APLC, Coronado, California; for Petitioner.

Kenneth M. Simon, Flicker, Garelick & Associates, LLP, New York, New York, for Respondents Service Employees International, Inc., and Insurance Company of the State of Pennsylvania.

M. Patricia Smith, Solicitor of Labor; Rae Ellen James, Associate Solicitor; Mark Reinhalter, Counsel for Longshore; Gary K. Stearman, Counsel for Appellate Litigation; Matthew W. Boyle, Attorney; Office of the Solicitor, United States Department of Labor, Washington, D.C.; for Respondent Director, Office of Workers' Compensation Programs.

## OPINION

NOONAN, Circuit Judge:

James Fenske petitions for review of a decision of the Benefits Review Board of the Department of Labor (the "Board") holding that Fenske could not receive concurrent payments for total disability and permanent partial disability under the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. §§ 901–50. While we generally disallow concurrent awards, Fenske seeks relief under our holding in *Stevedoring Servs. of Am. v. Price*, 382 F.3d 878 (9th Cir. 2004) (as amended) ("*Price*"), which allows concurrent awards for certain time-delayed injuries. We deny Fenske's petition for review of the Board's decision.

### FACTS AND PROCEEDINGS

James Fenske was a truck driver for a United States government contractor in Iraq during the Iraq War. On October 9, 2005, a suicide bomber in a vehicle collided head-on with the truck Fenske was driving. The bomb did not explode, but Fenske suffered severe injuries to his lower back from the collision. This accident ended Fenske's tour in Iraq.

Fenske sought compensation under the Act for his injuries. An Administrative Law Judge ("ALJ") awarded Fenske temporary total disability benefits from October 9, 2005 until July 27, 2008, followed by permanent partial disability benefits. The ALJ later granted Fenske's petition to modify the award, granting him permanent total disability benefits, rather than partial disability benefits, from July 28, 2008 onwards.

During the proceedings, Fenske also presented an audiogram from June 4, 2009, which showed hearing loss in both ears. The parties stipulated to a 9.7% permanent loss of hearing and the ALJ found that the hearing loss was caused by Fenske's work in Iraq. The ALJ held that under the Board's precedent, concurrent payments for the hearing loss were unavailable because Fenske was already receiving compensation for total disability. *See B.S. (Stinson) v. Bath Iron Works Corp.*, 41 BRBS 97 (2007); *Johnson v. Del Monte Tropical Fruit Co.*, 45 BRBS 27 (2011).

Fenske appealed to the Board, which upheld the ALJ's decision denying concurrent payments. Fenske now petitions for review of the Board's decision.

## STANDARD OF REVIEW

We review the Board's decisions on questions of law de novo. *Price*, 382 F.3d at 883. The Board reviews the ALJ's factual findings for substantial evidence and we review the Board to ensure it applied that standard. *Todd Shipyards Corp. v. Dir., OWCP*, 792 F.2d 1489, 1491 (9th Cir. 1986).

We review the litigation position of the Director of the Office of Workers' Compensation Programs with some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and *United States v. Mead Corp.*, 533 U.S. 218 (2001). *Price v. Stevedoring Servs. of Am.*, 697 F.3d 820, 824–33 (9th Cir. 2012) (en banc) ("*Price II*"). The degree of deference we provide the government depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to

persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

## DISCUSSION

### I

Fenske seeks concurrent compensation for a "scheduled" injury (hearing loss) under 33 U.S.C. § 908(c)(13) and total disability caused by his back injury. Under the Act, a worker suffering permanent or temporary total disability is entitled to two-thirds of his or her weekly wage during the continuance of the disability. *Id.* § 908(a), (b). Similarly, a worker suffering a permanent partial disability under 33 U.S.C. § 908(c)(21) is entitled to two-thirds of his or her lost wage-earning capacity for the continuance of the disability.

"Scheduled" losses, in contrast, are a set of common statutorily-enumerated permanent partial disabilities, such as hearing loss, that are compensated at two-thirds of a worker's weekly wages for a number of weeks prescribed by statute. *See id.* § 908(c)(1)–(20); *see, e.g.*, *id.* § 908(c)(13)(B) ("Compensation for loss of hearing in both ears, two-hundred weeks."). The length of compensation is proportionally shorter if the loss is not complete: a 25% loss of hearing requires only fifty rather than two-hundred weeks of payment. *See id.* § 908(c)(19).

We have generally denied concurrent payments involving total disability because the Act "invokes wage-compensation principles rather than tort principles." *Rupert v. Todd Shipyards Corp.*, 239 F.2d 273, 274–77 (9th Cir. 1956) (per curiam) (denying concurrent payments for permanent total

disability and facial disfigurement, a scheduled loss under § 908(c)(20)).  While tort principles seek to compensate a plaintiff for every injury wrongfully suffered, *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986); Dan B. Dobbs, et al., *The Law of Torts* § 10 (2d ed. 2016), wage-compensation principles repay workers for lost earning capacity, not the injury itself.  Once a worker has lost all earning capacity through total disability, an additional award would constitute "double dipping," that is, the worker would be compensated "for a loss of earning capacity that is accounted for in another award."  *Price*, 382 F.3d at 885.[1]

These principles and the rule against double dipping apply to scheduled losses.  *Rupert*, 239 F.2d at 275–76.  The D.C. Circuit has held that scheduled losses are "based upon a damages concept rather than loss of wage-earning capacity" because they are paid regardless of an actual loss in earning capacity.  *See Henry v. George Hyman Constr. Co.*, 749 F.2d 65, 73 (D.C. Cir. 1984).  However, a scheduled loss disability only exists under the Act if there is an "incapacity . . . to earn the wages which the employee was [previously] receiving." 33 U.S.C. § 902(10).  Rather than changing the Act's underlying wage-compensation principles, scheduled losses exist to "ameliorate an otherwise intolerable administrative burden by providing a certain and easily applied method of determining the effect on wage earning capacity of typical and classifiable injuries."  *Rupert*, 239 F.2d at 275–76; *see*

---

[1] We have never directly held that the double dipping prohibition applies to temporary total disability under § 908(b).  Because Fenske's argument is premised entirely on our holding in *Price*, described below, we need not reach the issue here.  *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) ("'We review only issues which are argued specifically and distinctly in a party's opening brief.'"  (citation omitted)).

*also Korineck v. Gen. Dynamics Corp. Elec. Boat Div.*, 835 F.2d 42, 43–44 (2d Cir. 1987).

II

While accepting the above principles, Fenske argues that he should be paid a concurrent award based on our holding in *Price*. There, the petitioner suffered a permanent partial disability under § 908(c)(21) and was awarded two-thirds of his lost earning potential. *Price*, 382 F.3d at 882. Years later, Price suffered a second injury causing permanent total disability. *Id.* We held that under those circumstances, concurrent payments were warranted because the later total disability award was based on a wage that had already been decreased by the earlier partial disability. *Id.* at 889; *see also Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 91 (D.C. Cir. 1980) (allowing concurrent payments under similar circumstances).

Fenske seeks to extend *Price*'s holding beyond permanent partial disabilities under § 908(c)(21) to scheduled losses. We need not address this issue: a prerequisite for applying the *Price* theory is that the partial disability preceded the total disability. Because Fenske's hearing loss did not precede his back injury, *Price* does not apply.

While Fenske was exposed to excessive noise throughout his employment in Iraq, the only evidence of his hearing loss was an audiogram obtained on June 4, 2009, four years after his employment ended. In *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs*, the Supreme Court held that hearing loss is not a latent disease involving a delayed onset of disability. 506 U.S. 153, 162, 165 (1993) ("*Bath Iron Works*"); *see also* 33 U.S.C. § 910(i).

Instead, hearing loss "occurs simultaneously with the exposure to excessive noise" and "the injury is complete when the exposure ceases." *Bath Iron Works*, 506 U.S. at 165. As a result, the Court held that when a post-retirement audiogram shows hearing loss, "the date of last exposure—the date upon which the injury is complete—is the relevant time of injury for calculating a retiree's benefits for occupational hearing loss." *Id.* Under this rule, Fenske's date of last exposure was the same day Fenske suffered his back injury and was forced to leave Iraq.

Fenske argues that we should formulate an alternate rule based on the Supreme Court's statement in *Bath Iron Works* that a hearing loss injury "occurs simultaneously with the exposure to excessive noise." *Id.* Although not addressed by *Bath Iron Works* directly, Fenske's argument is simply inconsistent with the bright-line date-of-last-exposure rule adopted by the Court. That rule "aids in the goal of avoiding unnecessary administrative difficulties and delays" by not setting the date of disability on the exact date of injury. *Ramey v. Stevedoring Servs. of Am.*, 134 F.3d 954, 962 (9th Cir. 1998) (citations and internal quotation marks omitted). As an injury that progresses with exposure over time, determining the date and extent of hearing loss before the date of last exposure would likely delay proceedings and require more speculation than fact.

Additionally, we have previously rejected attempts to set the date of hearing loss disability earlier than the date of last exposure when the proof of earlier hearing loss was anything less than a reliable audiogram. In *Ramey*, a worker obtained an audiogram during his employment and two other audiograms after he retired, all of which showed hearing loss. *Id.* at 960–62. The ALJ found one of the post-retirement

audiograms to be the most reliable and therefore "determinative." *Id.* We held that "the date of last exposure prior to the determinative [post-retirement] audiogram" was the relevant date for disability benefits and rejected the date set by the less-reliable audiogram obtained during employment. *Id.*; *see also Stevedoring Servs. of Am. v. Dir., OWCP*, 297 F.3d 797, 803–05 (9th Cir. 2002) (holding that a reliable audiogram obtained during employment can be one of multiple determinative audiograms). Here, Fenske does not even provide unreliable evidence of hearing loss before his date of last exposure to excessive noise.

In a case where the only evidence of hearing loss is a post-retirement audiogram, we hold that the *Bath Iron Works* rule applies when determining the timing of disabilities under *Price*. Fenske's last day of exposure to excessive noise was the same day as his back injury and *Price* does not apply.

### III

Fenske requests that if the full measure of concurrent payments are not available, he should at least be provided a decreased award capped at two-thirds of his wage under *ITO Corp. of Baltimore v. Green*, 185 F.3d 239 (4th Cir. 1999). There, the Fourth Circuit held that the total of multiple awards should have a ceiling of two-thirds of a worker's average weekly wage—the amount awarded to a worker with total disability. *Id.* at 242–43. This relief would benefit Fenske because his total disability award was capped by § 906(b) at 200 times the national average weekly wage, an amount that was less than two-thirds of his average weekly wage for multiple years. The § 906(b) cap does not limit the total amount paid for multiple awards. *Price*, 382 F.3d at 889–92.

This argument provides no additional rationale for allowing concurrent payments. We decline to provide the requested relief.

## CONCLUSION

Under wage-compensation principles, concurrent payments for total disability and scheduled permanent partial disability are generally unavailable. The *Price* exception does not apply because Fenske's hearing loss did not precede his back injury. We **DENY** Fenske's petition for review.